# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| TERRY D. QUATTLEBAUM,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A., and<br>COUNTRYWIDE HOME LOANS, INC.,<br><br>Defendants. | Civil Action No. TDC-14-2688 |

## MEMORANDUM OPINION

This case comes before the Court on a Motion to Dismiss the Amended Complaint, ECF No. 31, filed by Defendants Bank of America, N.A. and Defendant Countrywide Home Loans, Inc. ("Countrywide"). Also pending are Plaintiff Terry Quattlebaum's Motion for Summary Judgment, ECF No. 33, and Motion for Case Assignment to a Magistrate Judge, ECF No. 41. Having reviewed the briefs, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motion to Dismiss is GRANTED, the Motion for Summary Judgment is DENIED, and the Motion for Case Assignment to a Magistrate Judge is DENIED AS MOOT.

## BACKGROUND

On August 20, 2014, Defendants removed this case, originally filed by Quattlebaum in the District Court for Prince George's County, Maryland, to this Court. On August 27, 2014, Defendants moved to dismiss the Complaint for failure to state a claim. On March 10, 2015, this Court granted that Motion, but granted Quattlebaum leave to amend certain claims, specifically his claims under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*

(2012); the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* (2012), and section 3-501 of the Maryland Uniform Commercial Code, Md. Code. Ann., Com. L. § 3–501 (2013), which adopts Uniform Commercial Code ("U.C.C.") § 3–501.[1] The Court dismissed Quattlebaum's quiet title claim with prejudice. On March 24, 2015, Quattlebaum filed an Amended Complaint, ECF No. 27, in which he asserts all of the claims, including the quiet title claim, pleaded in his original Complaint.

Many of the facts underlying this case are set out in the Court's prior Memorandum Opinion granting Defendants' Motion to Dismiss Quattlebaum's original Complaint. ECF No. 25. Quattlebaum makes the following new allegations in his Amended Complaint. On his RESPA claim, he asserts that on May 23, 2012 and July 28, 2012, he made what he deems "qualified written requests" ("QWRs") to Bank of America. Am. Compl. at 7. Quattlebaum does not provide copies of those requests. However, regarding his May 23, 2012 request, Quattlebaum alleges that he asked Bank of America to provide him "pertinent and timely disclosures regarding the nature and costs of my real estate settlement process" as well as the "true property value that affected the entire financial settlement process." Am. Compl. at 16. He asserts that such information "is required to be provided in advance." *Id.*

Regarding his July 28, 2012 request, Quattlebaum makes no explicit allegations in his Amended Complaint, but attaches several responses he received from Bank of America. In an August 24, 2012 response, Bank of America provided Quattlebaum with information identifying

---

[1] Because the U.C.C. is a model code, it has no legal effect in and of itself. However, it has been codified in Maryland. *See* Md. Code Ann., Com. L. § 1-103. *See also Hartford Fire Ins. Co. v. Maryland Nat'l Bank, N.A.*, 671 A.2d 22, 32 (Md. 1996) (referencing "Maryland's adoption of the UCC"). The Court accordingly construes Quattlebaum's U.C.C. § 3–501 claim as a state-law claim made pursuant to the Maryland Code, Commercial Law Article § 3–501, which is identical to the U.C.C. provision in all respects. However, for consistency with Quattlebaum's pleadings, the Court refers to the claim as a U.C.C. claim.

2

the mortgage servicer and the owner of the loan. In a second August 24, 2012 response, Bank of America informed Quattlebaum that it had mailed him a loan transaction history statement under separate cover, detailed the allocations of his monthly mortgage payment, reviewed the process whereby the loan was recorded in the Mortgage Electronic Registration System ("MERS"), and indicated that Quattlebaum's request for a rescission of the loan had been forwarded to "the appropriate department." Am. Compl., Ex. 2 at 1, ECF No. 27-2. On August 28, 2012, a law firm representing Bank of America also wrote to Quattlebaum about his account. That letter stated Bank of America's position that Quattlebaum's request sought information that went "beyond that which is available" through a QWR. *Id.*, Ex. 3 at 1, ECF No. 27-3. The letter nevertheless provided a payment history and information about the original execution of the promissory note underlying the mortgage, the current holder of the note, and the loan servicer.

Quattlebaum also attaches to his Amended Complaint a series of responses he received from Bank of America in 2013 and 2014 in response to subsequent requests and complaints he submitted. In one such response, dated June 14, 2013, Bank of America states that some of Quattlebaum's requests "constitute valid [QWRs]" and therefore that Bank of America, under separate cover, would be responding to them. *Id.*, Ex. 6 at 1, ECF No. 27–6. The response also asserted that several of Quattlebaum's "remaining requests seem generally directed toward disavowing the enforceability of the loan documents you signed at closing" and thus declined to respond to those requests absent a showing on Quattlebaum's part that the loan documents he signed were in fact unenforceable. *Id.* In a June 9, 2014 response to a complaint filed with the Consumer Financial Protection Bureau, Bank of America's attorneys wrote that Quattlebaum's "demand for the original note" could not be met because "it needs to be retained, since it

3

documents your obligation to make payments on your mortgage." *Id.*, Ex. 8 at 1, ECF No. 27-8. Bank of America did, however, include a copy of the note with the letter.

Quattlebaum also attaches a December 22, 2014 letter from Bank of America informing him that, due to an error in the format of the documents, a previous modification of his loan had just been recorded in the county recorder's office. The letter states that, as a result, Quattlebaum needed to notarize and return certain loan documents so they could be reprocessed. These documents were not memorializing a new loan modification, but were "cop[ies] of [Quattlebaum's] previous loan modification." *Id.*, Ex. 9 at 1, ECF No. 27-9.

As to his TILA claim, Quattlebaum asserts that, when Bank of America acquired his loan, it failed to provide him written notification to that effect within 30 days, as required by the statute. He does not, however, indicate when he believes Bank of America acquired his loan. As for his U.C.C. claim, Quattlebaum asserts that U.C.C. § 3–501 obligates a mortgage holder to, upon demand, "exhibit the instrument." Am. Compl. at 17. He thus concludes that Bank of America is required, but has failed, to provide proof that it holds his mortgage note and thus has failed to prove that it has the right "to enforce the instrument (or note)." *Id.*

Ultimately, Quattlebaum asserts that the "primary legal theory" underlying his Amended Complaint is that "Defendants allege[d] misconduct resulted in the issuance of [an] improper mortgage, premature and unauthorized foreclosure action, violation of Plaintiff's homeowners' rights and protections, and the use of false or deceptive affidavits and other documents to allege some validity or enforceability of Plaintiffs' mortgage deed." *Id.* at 5–6.

On April 24, 2015, Bank of America moved to dismiss Quattlebaum's Amended Complaint. ECF No. 31. On May 20, 2015, Quattlebaum filed his Response to that Motion, to which Bank of America filed a Reply on June 8, 2015. ECF Nos. 35 & 37. Meanwhile, on April

30, 2015, Quattlebaum filed a second Motion for Summary Judgment, ECF No. 33. On May 20, 2015, Bank of America filed its Response to that Motion, to which Quattlebaum filed a Reply on May 21, 2015. ECF Nos. 34 & 35. Quattlebaum later supplemented his Reply on June 4, 2015, prompting Bank of America to make its own supplemental filing on June 15, 2015. ECF Nos. 38 & 37. On June 18, 2015, Quattlebaum then filed yet another supplement. ECF No. 40.[2] On August 21, 2015, Quattlebaum filed a Motion for Case Assignment to a Magistrate Judge, which Bank of America opposed. ECF Nos. 41 & 42. On September 14, 2015, Quattlebaum filed his Reply to Bank of America's Response. ECF No. 43.

## DISCUSSION

### I. Defendants' Motion to Dismiss

Because the Court explicitly limited the Amended Complaint to claims under RESPA, TILA, or U.C.C. § 3-501, all other claims in the Amended Complaint are dismissed with prejudice. *See* Mem. Op. at 15, ECF No. 25. For the reasons set forth below, the RESPA, TILA, and U.C.C. § 3-501 claims are also dismissed with prejudice.

#### A. Legal Standard

To overcome a Rule 12(b)(6) motion, a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice and are not entitled to the assumption of truth. *Id.* In evaluating the sufficiency of the plaintiff's claims, the Court must examine the complaint as a whole, consider

---

[2] Because sur-reply briefs are not permitted absent leave of the Court, and neither party sought such leave, all briefs filed after the May 21, 2015 Reply are stricken. D. Md. Local R. 105.2(a).

the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). Complaints filed by *pro se* plaintiffs are "to be liberally construed" and "must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

### B. RESPA Claims

In the Amended Complaint, Quattlebaum has again failed to identify any specific provision of RESPA that he believes Defendants have violated. Quattlebaum does assert that Defendants violated RESPA because they failed to provide him a "Notice of Transfer." Am Compl. at 16. RESPA requires mortgage servicers "of any federally related mortgage loan" to "notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person" not less than 15 days before the effective date of the transfer. 12 U.S.C. § 2605(b)(1), (2)(A). Quattlebaum alleges that he did not receive any such notice until two years after an unspecified transfer occurred and "only after [he] brought a Complaint against the Defendants." Am. Compl. at 16. The evidence Quattlebaum provides of this alleged violation is the December 22, 2014 letter from Bank of America informing him that, due to an error in the previous format of various documents, he would need to resubmit documents related to his previous loan modification. The events detailed in that letter, however, do not trigger this RESPA provision. A Notice of Transfer is required only when there has been an "assignment, sale, or transfer of the servicing of the loan to any other person." 12 U.S.C. § 2605(b)(1). Here,

the letter indicates not that Quattlebaum's loan was being transferred to another entity, but that the terms of his loan with Bank of America—the same loan servicer he had had since 2009—had been modified. Am. Compl. Ex. 8 at 5. Quattlebaum's allegation therefore fails to meet one of the required elements of this RESPA claim: that a transfer of loan servicing occurred.

Furthermore, any RESPA claim against Defendants for a failure timely to notify would be time-barred. The statute of limitations for RESPA actions arising under § 2605 is three years. 12 U.S.C. § 2614. In his original Complaint, Quattlebaum asserted that his mortgage was sold to Countrywide in 2008, that Bank of America acquired Countrywide that same year, and that Bank of America began servicing his loan by at least 2009. He made that assertion as part of claiming that, from 2009 to 2012, Bank of America repeatedly misapplied his mortgage payment. *See* Compl. at 2–3, ECF No. 2; *cf. Andrews v. Metro North Commuter R. Co.*, 882 F.2d 705, 707 (2d Cir. 1989) ( "The amendment of a pleading does not make it any the less an admission of the party"). Quattlebaum reiterates that basic chronology in his second Motion for Summary Judgment, where he asserts that his "mortgage was originated and serviced by Defendants beginning in 2008." Second Mot. Sum. J. at 3. Thus, based on Quattlebaum's own allegations, his loan was last sold, assigned, or transferred in or before 2009, placing any failure on the part of Defendants to notify him of that transfer well outside the statute of limitations.

Quattlebaum arguably also alleges a cause of action under 12 U.S.C. § 2605(e), the RESPA provision relating to QWRs, based on his references to his May 23, 2012 and July 28, 2012 letters as QWRs. RESPA requires a loan servicer to address and respond in writing to a QWR, defined as a written request to a mortgage servicer that "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12

7

U.S.C. § 2605(e)(1)(B)(ii). As this language suggests, a QWR is a means for a borrower to dispute alleged inaccuracies in how a mortgage servicer is billing or crediting payments or to obtain other information about the servicing of the loan. In this context, "servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan ... and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

When a mortgage servicer receives such a request, it is required to investigate and, if appropriate, correct any inaccuracies in the borrower's account. 12 U.S.C. § 2605(e)(2)(A). The servicer is then required to provide the borrower with written notice of any correction made in response to the QWR, or an explanation of why no corrective action was deemed necessary. *Id.* § 2605(e)(2)(A), (B). If the borrower has requested other information about the servicing of the loan, the servicer is required either to provide that information or explain why such information is not being provided. *Id.* § 2605(e)(2)(C). The servicer must also provide contact information for a representative who can answer questions about the account. *Id.* A mortgage servicer must acknowledge receipt of a QWR within five days and substantively respond to the request within 30 days. 12 U.S.C. § 2605(e)(2).

Under these provisions, Quattlebaum's May 23, 2012 letter is not a QWR. Quattlebaum asserts that in that letter he requested "pertinent and timely disclosures regarding the nature and costs of my real estate settlement process" and the "true property value that affected the entire financial settlement process." Am. Compl. at 16. Neither of these requests relates to the servicing of Quattlebaum's mortgage. Instead, they both deal with what Quattlebaum believes were failures on the part of his mortgage lender to make the requisite disclosures at closing. As

discussed below, the requirement that mortgage lenders make certain disclosures is governed by § 2603, not § 2605. Quattlebaum's May 23, 2012 letter therefore cannot serve as the basis for a cause of action under § 2605.

As for Quattlebaum's July 28, 2012 letter, Quattlebaum acknowledges that he received a response on August 27, 2012. Quattlebaum has not identified any request made in that letter that went unanswered. Moreover, the exhibits to Quattlebaum's Amended Complaint establish that from that point forward, Bank of America repeatedly provided Quattlebaum with detailed information about the servicing of his loan in response to additional requests. On multiple occasions, he was told who serviced his mortgage and who owned his mortgage. He was also given a loan transaction history statement, detailing his payment history, and was provided with a breakdown of his monthly mortgage payment, so he could see how that payment was applied. Thus, to the extent that Quattlebaum's later requests were QWRs seeking information about the servicing of his loan, the exhibits to the Amended Complaint indicate that Bank of America provided him with extensive information in that regard.

Nor does Quattlebaum appear to assert anything to the contrary. Instead, he contends that, in their responses to these requests, "Defendants failed to provide any proof of having legal enforceability of [his] mortgage loan." Am Compl. at 8. Such information goes beyond the receiving and posting of payments, which is the limited scope given to "servicing" in the statute. Several courts, including within this Circuit, have thus determined that a written communication with a mortgage servicer that disputes the validity of the loan does not qualify as a QWR. *See Ward v. Security Atlantic Mortg. Elec. Registration Sys. Inc.,* 858 F. Supp. 2d 561, 574-75 (E.D.N.C. 2012) (holding that a request by a borrower to his mortgage servicer seeking "copies of loan documents, assignments of the deed of trust and promissory note and copies of property

inspection reports and appraisals and a loan transactional history" was not a QWR within the meaning of RESPA because it was a "communication challenging the validity of the loan and not a communication relating to the servicing of the loan"); *Minson v. CitiMortgage, Inc.*, No. DKC–12–2233, 2013 WL 2383658 at *1, *4 (D. Md. May 29, 2013) (holding that a request by a borrower to her mortgage servicer seeking "documents and transfers showing that [the servicer] has been given authorization from the 'lender' to collect and/or foreclose" was not a QWR within the meaning of RESPA) (internal brackets omitted). Thus, to the extent that Quattlebaum's July 28, 2012 and later requests sought information about the validity of Quattlebaum's mortgage, they were not QWRs within the meaning of RESPA and therefore cannot be a basis for a cause of action under § 2605.

Finally, because Quattlebaum describes his May 23, 2012 request to Bank of America as a request for disclosures regarding his real estate settlement process, he arguably is also asserting a cause of action under 12 U.S.C. § 2603, which requires that, at closing, a borrower be provided with a form that "conspicuously and clearly itemize[s] all charges imposed upon the borrower and all charges imposed upon the seller in connection with the settlement" and "indicate[s] whether any title insurance premium included in such charges covers or insures the lender's interest in the property, the borrower's interest, or both." 12 U.S.C. § 2603(a), (b). To the extent that Quattlebaum is alleging that Bank of America failed to comply with these provisions, his claim fails. There does not appear to be a private right of action arising from a mortgage servicer's disclosure violations. *See e.g., Altman v. PNC Mortg.*, 850 F. Supp. 2d 1057, 1074 (E.D. Cal. 2012) ("The absence of a private right of action dooms a purported RESPA claim based on disclosure violations."). Even if such a private right of action existed, Quattlebaum's claim under this section would be barred by the statute of limitations. RESPA claims must be

filed within one year or three years of the alleged violation, depending on the specific provision at issue. 12 U.S.C. § 2614. Quattlebaum closed on the mortgage at issue in this case in January 2008, *see* Mem. Op. at 2, but did not file this lawsuit until 2014, well after three years had elapsed. Quattlebaum thus has not alleged a viable RESPA claim.

### C. TILA Claim

TILA requires that when a mortgage is sold or transferred, the new mortgage owner must notify the borrower within 30 days of that sale or transfer. 15 U.S.C. § 1641(g)(1). Quatttlebaum alleges that such notice was not provided at the time of the transfer in 2008, and that he did not receive such information until August 27, 2012. Any suit asserting a cause of action related to these notification requirements must be filed within one year of the alleged violation. 15 U.S.C. § 1640(e). Thus, Quattlebaum had until 2009 to file his TILA claim, or arguably August 2013, which is one year after he acknowledges he became aware of the sale of the loan. Because Quattlebaum filed his suit in May 2014, his TILA claim is time-barred.

### D. U.C.C. Claim

In his U.C.C. claim, Quattlebaum asserts that U.C.C. § 3–501 obligates a mortgage holder to, upon demand, "exhibit the instrument." Am. Compl. at 17. He thus concludes that Bank of America is required, but has failed, to provide proof that it holds his mortgage note and thus has failed to provide proof that it has the right "to enforce the instrument (or note)." *Id.* at 17. Based on his description of his claim, Quattlebaum appears to read U.C.C. § 3–501, titled "Presentment" and relating to the process for presenting a check or other negotiable instrument for payment, as requiring Defendants to produce for him the original promissory note to his mortgage in order to establish that his mortgage is valid.

Quattlebaum's U.C.C. claim thus amounts to a rehashing of the quiet title claim alleged in his original Complaint. That claim is no more successful when recast as one under the U.C.C. As the Court ruled in its previous Memorandum Opinion, in Maryland, the right to enforce the deed of trust automatically follows the note, making the two inseparable. *Deutsche Bank Nat'l Trust Co. v. Brock*, 63 A.3d 40, 48 (Md. 2013). Therefore, "[t]he title to any promissory note ... conclusively is presumed to be vested in the person holding the record title to the mortgage." Md. Code Ann., Real Prop. § 7-103(a). Bank of America's title to the deed of trust to 6970 Hanover Parkway, Apartment 101, was recorded in the relevant real property records on August 7, 2012. Bank of America is therefore "conclusively presumed" to have the right to enforce the promissory note attached to that deed of trust. Courts in this district have thus repeatedly rejected this "show me the note" argument. *See Jones v. Bank of N.Y. Mellon*, No. DKC-13-3005, 2014 WL 3778685, at *4 (D. Md. July 29, 2014); *Harris v. Household Finance Corp.*, RWT-14-606, 2014 WL 3571981, at *2 (D. Md. July 18, 2014) (finding that "there is no recognizable claim" that a mortgagor must "produce 'wet ink' signature documents" in order for a mortgage to be valid). Quattlebaum's backdoor effort to resurrect his quiet title claim through U.C.C. § 3-501 must therefore be rejected.

## II. Quattlebaum's Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56(a), the Court must grant summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Here, as outlined above, Quattlebaum has failed to allege facts sufficient to state any plausible claim for relief. He therefore necessarily fails to establish that he is entitled to judgment as a matter of law. The Motion for Summary Judgment is denied.

### III. Quattlebaum's Motion for Case Assignment to a United States Magistrate Judge

Quattlebaum has requested that his case to be assigned to a United States Magistrate Judge. Mot. Case Assign., ECF No. 41. Because the Motion to Dismiss will be granted as to all remaining claims, there is no need to assign the case to a Magistrate Judge. The Motion is therefore denied as moot.

### CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 31, is GRANTED, Quattlebaum's Motion for Summary Judgment, ECF No. 33, is DENIED, and Quattlebaum's Motion for Case Assignment to a Magistrate Judge, ECF No. 40, is DENIED AS MOOT. A separate Order follows.

Date: November 12, 2015

THEODORE D. CHUANG
United States District Judge